**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

RHONDALEE T.,

                        Plaintiff,

        v.                                                      3:17-CV-1241
                                                                (CFH)
NANCY BERRYHILL, Acting
Commissioner of Social Security,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN & GORTON                                PETER A. GORTON, ESQ.
 Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.                     MONIKA K. CRAWFORD, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION & ORDER</u>

        Currently pending before the Court,[1] in this Social Security action filed by

Rhondalee T.[2] ("Plaintiff") against the Commissioner of Social Security ("Defendant" or

_____

[1]   Parties consented to review of this matter by a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 6.

[2]   In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District

"the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9 and 15.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1976, making her 37 years old at the amended alleged onset date and 40 years old at the date of the ALJ's decision. Plaintiff reported completing the twelfth grade and being in special education classes. At the initial level, Plaintiff alleged disability due to a disc impairment in her lower back, scoliosis, a learning disability, a right knee impairment, and a stress disorder.

### B.     Procedural History

Plaintiff applied for a period of disability and disability insurance benefits as well as Supplemental Security Income on November 4, 2014, alleging disability beginning at her birth in 1976. She subsequently amended her alleged onset date to December 1,

---

of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify the plaintiff by her first name and last initial.

2013.  (T. 60-61.)[3] Plaintiff's applications were initially denied on March 18, 2015, after

which she timely requested a hearing before an Administrative Law Judge ("ALJ").

Plaintiff appeared at a hearing before ALJ Shawn Bozarth on March 16, 2017.  (T. 34-

73.)  On May 26, 2017, the ALJ issued a written decision finding Plaintiff was not

disabled under the Social Security Act.  (T. 12-30.)  On October 10, 2017, the Appeals

Council denied Plaintiff's request for review, making the ALJ's decision the final decision

of the Commissioner.  (T. 1-6.)


### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and

conclusions of law.  (T. 17-25.)  First, the ALJ found that Plaintiff met the insured status

requirements of the Social Security Act through December 31, 2013.  (T. 17.)  Second,

the ALJ found that Plaintiff has not engaged in substantial gainful activity since

December 1, 2013, the amended alleged onset date.  (T. 17.)  Third, the ALJ found that

Plaintiff's lumbar spine disorder and thoracic spine disorder are severe impairments.  (T.

17.)  Fourth, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 20.)  Specifically, the ALJ considered

Listing 1.04 (disorders of the spine).  (*Id.*)  Fifth, the ALJ found that Plaintiff has the

residual functional capacity ("RFC") to perform sedentary work

---

[3]       The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

> except she should only occasionally engage in climbing ladders, ropes, scaffolds, as well as balance, kneel, crouch, stoop and crawl, but otherwise has no limitation concerning other postural activities. She can change from sitting to standing at the workstation every forty-five minutes, remaining at the workstation in the changed position for forty-five minutes before resuming the sitting position.

(T. 20.) Sixth, the ALJ found that Plaintiff has no past relevant work. (T. 23.) Seventh, and lastly, the ALJ found that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. (T. 23-24.) Therefore, the ALJ concluded that Plaintiff is not disabled.

## D. Arguments

### 1. Plaintiff's Arguments

First, Plaintiff argues that the ALJ erred in finding no diminishment to work pace and/or attendance notwithstanding the unanimous opinion of all sources. (Dkt. No. 9 [Pl.'s Mem. of Law] at 11-13.) Specifically, Plaintiff argues that two uncontradicted opinions from Eric Seybold, M.D., and consultative examiner Mary Ann Moore, Psy.D., indicated that Plaintiff has limitations in the ability to work consistently, and that the ALJ improperly substituted his judgment for these undisputed, competent medical opinions. (*Id.*) Plaintiff argues further that limitations to attendance are supported by the ALJ's factual findings. (*Id.* at 12.)

Second, Plaintiff argues that the ALJ erred at Step Two by failing to find her psychiatric or intellectual impairments to be severe and by failing to find any limitations stemming from these conditions. (*Id.* at 13-23.) Plaintiff again argues that the ALJ

4

improperly substituted his lay judgment for undisputed medical opinions from Dr. Moore and Patricia Rourke, Ph.D., indicating Plaintiff has severe psychiatric and/or intellectual impairments causing more than *de minimis* work-related limitations.  (*Id.* at 13-15, 22-23.)  Plaintiff also argues the ALJ erred in affording only partial evidentiary weight to Dr. Moore's opinion and failed to provide sufficient explanation for this weight to allow for meaningful judicial review.  (*Id.* at 15-16.)  Plaintiff argues that the ALJ erred in  (1) affording limited weight to Dr. Rourke's opinion because his reasoning is internally inconsistent and contradictory, ignoring that Plaintiff's prior work was performed on an unskilled basis; and (2) failing to include any cognitive-related limitations in the RFC.  (*Id.* at 18-19.)  Plaintiff contends that the ALJ did not cite any medical opinion contradicting the opinions from Dr. Moore and Dr. Rourke and rejected these opinions based on his lay interpretation of the medical evidence.  (*Id.* at 16-18, 23.)  Plaintiff argues that the ALJ understated the extent of Plaintiff's psychiatric and cognitive issues and failed to adequately address these issues by including such limitations in a proper hypothetical to the vocational expert ("VE").  (*Id.* at 19-22.)  Plaintiff contends that there is no meaningful explanation as to how or why limiting her to unskilled work accommodates her psychiatric and cognitive issues, and that the ALJ did not address her psychiatric or cognitive impairments when discussing her RFC.  (*Id.* at 20-22.)

Third, Plaintiff argues that the ALJ's Step Five determination is not supported by substantial evidence because it does not properly account for Plaintiff's true limitations in standing/walking, work pace, absenteeism, and a need for a sit/stand option or those limitations related to her cognitive and psychiatric impairments, which renders the

5

resulting VE testimony unreliable. (*Id.* at 23.) Plaintiff also argues that the VE testimony concerning job numbers is not reliable and does not constitute substantial evidence that jobs exist in significant numbers because said job numbers referred to a broad range of positions and were not limited to the specific titles within the Dictionary of Occupational Titles ("DOT") that the VE identified. (*Id.* at 24-25.) Plaintiff contends the VE did not attempt to eliminate the jobs that Plaintiff cannot perform within that broad range of jobs and the resulting job numbers are therefore ambiguous and do not satisfy Defendant's burden at Step Five. (*Id.* at 25.)

### 2. Defendant's Arguments

First, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff had no limitations in work pace and/or attendance. Dkt. No. 15, at 7-10 [Def.'s Mem. of Law]). Specifically, Defendant argues that the ALJ properly gave little weight to Dr. Seybold's opinion that Plaintiff would be off-task 20-33 percent of the workday and absent from work four days per month because it was inconsistent with his own treatment notes and other evidence of record. (*Id.* at 7-9.) Defendant contends that the ALJ may set aside the opinion of a treating physician that is contradicted by the weight of other record evidence. (*Id.* at 7-8.)

Defendant also argues that the ALJ properly gave little weight to the portion of Dr. Moore's opinion indicating that plaintiff had no more than moderate limitations in maintaining a regular work schedule and maintaining attention and concentration and that, even if Dr. Moore's opinion was accepted, this portion of the opinion does not

support Plaintiff's contention that she would be off-task and absent from work more than customarily acceptable. (*Id.* at 9.) Defendant argues that moderate limitations like those assessed by Dr. Moore have previously been found to be compatible with the work pace and attendance demands of competitive work. (*Id.*) Defendant also argues that the ALJ pointed to other evidence indicating Plaintiff's attention and concentration and ability to maintain a schedule were consistent with the demands of competitive work. (*Id.* at 10-11.)

Second, Defendant argues that the ALJ properly evaluated Plaintiff's alleged mental impairments at Step Two and any error therein is harmless because he considered all of her impairments at Steps Four and Five of the sequential analysis. (*Id.* at 10-13.) Defendant argues that the ALJ reasonably concluded that Plaintiff's mental impairments were not severe at Step Two and reasonably gave partial weight to Dr. Moore's opinion. (*Id.* at 10.) Defendant also argues that the ALJ provided a detailed analysis of the objective evidence within his decision and that neither Dr. Moore or Dr. Rourke's opinions suggested limitations that preclude the unskilled jobs identified by the VE. (*Id.* at 11-13.)

Third, Defendant argues that substantial evidence supports the ALJ's conclusion that Plaintiff could perform work that exists in significant numbers in the national economy. (*Id.* at 13-15.) Specifically, Defendant contends that where a VE has adjusted the incidence numbers based on his or her experience to represent only those jobs available to a claimant based on the claimant's limitations, courts have found the VE's testimony sufficient to meet Defendant's Step Five burden. (*Id.* at 14.) Defendant

argues that the VE acknowledged the numbers she was using were not broken down by DOT code and testified she would be giving a reduced number to account for Plaintiff's specific limitations. (*Id.*) Defendant argues the VE also testified that the numbers she gave were based not only on the U.S. Statistical Publishing report, but on her judgment as a VE. (*Id.* at 14-15.) Defendant argues that the VE testimony could be reasonably accepted by the ALJ and constitute substantial evidence because the VE relied on acceptable statistical publications and her experience. (*Id.* at 15.)

### 3. Plaintiff's Reply

On reply, Plaintiff reasserts her arguments that the ALJ substituted his own opinion for that of the medical opinions of record and without any supporting medical opinion. (Dkt. No. 16, at 2-4 [Pl.'s Reply Mem. of Law].) Plaintiff also argues that there is no support for Defendant's contention that moderate limitations are not incompatible with competitive work. (*Id.* at 4-5.) Plaintiff contends that Dr. Seybold found that plaintiff had limitations in time off-task and/or attendance that exceeded employer standards, and Dr. Moore indicated moderate limitations, yet the ALJ failed to articulate a reason as to why these identified limitations did not rise above the employer tolerances identified by the VE. (*Id.* at 5.) Finally, Plaintiff argues that the VE reduced her overall job numbers to account for a sit-stand option, but did not reduce the job numbers to account for the fact that her numbers overstated the number of jobs available to Plaintiff. (*Id.* at 5-6.)

8

## II.    LEGAL STANDARDS

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord. Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If

9

supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there

10

is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord. McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Step Two

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits her physical or mental abilities to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895

11

F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Id.* (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (1) there is at least one other severe impairment, (2) the ALJ continues with the sequential evaluation, and (3) the ALJ 's analysis demonstrates that she adequately considered the evidence related to the non-severe impairment. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *Report and Recommendation adopted by* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Here, the ALJ found Plaintiff's lumbar spine disorder and thoracic spine disorder to be severe impairments. (T. 17.) The ALJ indicated that the record did not support the conclusion that Plaintiff's mental impairments are severe, noting that plaintiff graduated from high school, and that, despite reports of a learning disorder, her report card indicated she passed her courses and was ranked 85 in a class of 316 students. (T. 18, 247, 448-54.) The ALJ also pointed to Plaintiff's mental health treatment history and her consultative psychiatric evaluation with Dr. Moore and noted that her treatment

12

records supported the conclusion her mental impairments did not result in significant functional limitations.  (T. 18-19, 448-54, 494-555.)

At the psychiatric consultative examination in February 2015, Dr. Moore concluded that Plaintiff's attention and concentration were impaired due to learning issues and that her recent and remote memory skills were impaired specifically for more complex information.  (T. 451.)  Plaintiff's cognitive functioning was possibly borderline-to-deficient, her insight and judgment appeared fair, with learning issues as well as depression and anxiety.  (*Id.*)  Dr. Moore diagnosed posttraumatic stress disorder, an unspecified learning disorder, and the need to rule out borderline intellectual functioning and mild intellectual disability.  (T. 452.)  She opined that Plaintiff showed no limitation with regard to following and understanding simple directions and instructions and performing simple tasks independently.  (T. 451-52.)  Dr. Moore concluded that Plaintiff has moderate limitations with maintaining attention and concentration, learning new tasks, performing complex tasks independently, appropriately dealing with stress, relating with others, making appropriate work decisions, and maintaining a regular work schedule, with the results of the examination appearing to be consistent with psychiatric and cognitive issues which might significantly interfere with her ability to function on a daily basis.  (T. 452.)

At the initial determination level in March 2015, non-examining state Agency medical consultant T. Harding, Ph.D., opined that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning and

concentration, persistence or pace; and no repeated episodes of decompensation of extended duration.  (T. 79-80.)

In November 2016, Dr. Rourke conducted a psychological evaluation and indicated Plaintiff showed some impairment in attention and concentration during the interview.  (T. 733.)  Plaintiff tested with a full scale IQ ("FSIQ") of 81 and Dr. Rourke diagnosed a specific learning disorder with impairment in mathematics as well as a provisional diagnosis of an unspecified depressive disorder.  (T. 734, 737.)  Dr. Rourke indicated that Plaintiff's intellectual limitations with respect to working memory, processing speed, and perceptual reasoning as well as learning difficulties in mathematics needed to be considered in determining appropriate vocational placements and that Plaintiff would likely benefit from supportive services including the provision of a job coach.  (T. 737-38.)

The ALJ noted that Dr. Moore found moderate limitations for maintaining attention and concentration, but that counseling records indicated that Plaintiff's energy and attention was intact and her thought processes were coherent.  (T. 19, 364, 448-54.)  The ALJ afforded partial evidentiary weight to the opinions of Dr. Moore and Dr. Harding based on their programmatic expertise, but rejected the moderate limitations they identified because such limitations were not consistent with the objective evidence in record.  (T. 19, 74-86, 88-94, 448-54, 486-89.)  The ALJ also afforded limited weight to the Global Assessment of Functioning ("GAF") scores in the record because these subjectively assessed scores revealed only snapshots of Plaintiff's behavior and were neither standardized nor based on normative data.  (T. 19-20, 359-90.)  The ALJ

afforded limited weight to Dr. Rourke's opinion because the limitations she identified were based on Plaintiff's learning disorder, which did not previously interfere with her ability to engage in work activity.  (T. 20, 245, 730-38.)

In considering Plaintiff's alleged mental impairments, the ALJ found Plaintiff has at most mild restriction in understanding, remembering or applying information; interacting with others; maintaining concentration, persistence or pace; and adapting or managing oneself.  (T. 19.)  Within his RFC analysis, the ALJ also noted that although Plaintiff's mental impairments are not severe, the VE identified only unskilled positions, which the ALJ concluded fully accommodates Plaintiff's non-severe psychological impairments.  (T. 22.)

Plaintiff argues that the ALJ erred at Step Two by failing to find her psychiatric or intellectual impairments to be severe despite the opinions from Dr. Moore and Dr. Rourke and by failing to find any limitations stemming from these conditions.  (Dkt. No. 9, at 13-23 [Pl.'s Mem. of Law].)  Plaintiff also argues that the ALJ erred in the weights he afforded to the opinions of  Dr. Rourke and Dr. Moore, failed to provide sufficient explanation for these weights, improperly substituted his lay judgment for these opinions, and failed to discuss Plaintiff's psychiatric or cognitive impairments when discussing her RFC.  (Dkt. No. 9, at 13-23 [Pl.'s Mem. of Law]; Dkt. No. 16, at 2-4 [Pl.'s Reply Mem. of Law].)  The Court finds these arguments unpersuasive for the following reasons.

First, although the ALJ did not find that plaintiff had a severe mental impairment, he did find the existence of at least one severe impairment and continued the sequential

evaluation through Step Five, considering both Plaintiff's severe and non-severe impairments throughout that process. (T. 17-23.) Further, the ALJ's analysis at Step Two reflects careful consideration of Plaintiff's alleged mental impairments and related limitations and provides ample explanation for why he found Plaintiff's mental impairments to be non-severe. (T. 18-20.) The ALJ also addressed Plaintiff's alleged mental impairments and related limitations in discussing her RFC, albeit briefly, when he noted that the VE identified only unskilled positions, which properly accommodated Plaintiff's non-severe psychological impairments. (T. 22.) In the alternative, the Court finds that any error by the ALJ in failing to find Plaintiff's alleged mental impairments to be severe is harmless because the ALJ found other severe impairments, continued with the sequential evaluation, and provided adequate explanation showing that he properly considered the evidence related to Plaintiff's various impairments. (*Id.*)

Second, as discussed further below, the Court finds that the ALJ properly considered the opinion evidence of record regarding Plaintiff's alleged mental impairments and related limitations -- including those opinions from Dr. Moore, Dr. Harding, and Dr. Rourke -- and provided explanation for the weights afforded to these opinions. (T. 19-20.) This Court will not now reweigh that evidence before the ALJ. *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of the court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence'" where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009));

*Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). Therefore, for the reasons herein discussed, the ALJ's findings regarding Plaintiff's impairments at Step Two are supported by substantial evidence and remand is not required on this basis.

## B.  Opinion Evidence and RFC

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017),

17

*Report and Recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8)). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the

determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ found that Plaintiff can perform a modified range of sedentary work. (T. 20.) In so finding, the ALJ considered the various opinions of record, along with Plaintiff's testimony and treatment history. (T. 20-23.) The ALJ indicated that Plaintiff's allegations of debilitating symptoms were not fully consistent with the opinion evidence from consultative examiner Justine Magurno, M.D., and treating orthopedic surgeon Dr. Seybold. (T. 21.) The ALJ also noted that treating primary care physician Michelle Boyle, M.D., was unwilling to provide a medical source statement. (T. 22, 492-93.)

In March 2015, orthopedic consultative examiner Dr. Magurno observed that Plaintiff had a normal gait and station, her squat was half of full, she could walk on her heels and toes without difficulty, she needed no help changing for the exam or getting on and off the exam table, and she was able to rise from a chair without difficulty. (T. 481.) Dr. Magurno observed some limitation of range of motion in the thoracolumbar spine, no tenderness or spasm, negative straight leg raising testing bilaterally, and limited range of motion in the right knee due to back and knee pain. (T. 482.) She diagnosed back pain, disc disease, scoliosis, bilateral knee pain, acid reflux, sinus allergies, irritable bowel syndrome, temporomandibular joint dysfunction, and a history of stress disorder. (*Id.*) Dr. Magurno opined that plaintiff had moderate limitations for bending, lifting, carrying, and squatting. (T. 483.)

In February 2017, treating physician Dr. Seybold noted Plaintiff was status post lumbar fusion and had lower back pain with foot numbness intermittently. (T. 490.) He indicated that her conditions would cause pain, fatigue, and diminishment of concentration and work pace; Plaintiff would need to rest at work; and she would be off-task greater than 20 percent of the day, but less than 33 percent. (*Id.*) Dr. Seybold determined that Plaintiff's conditions would produce good days and bad days and cause more than four absences per month. (T. 490-91.) He further opined that Plaintiff could sit for approximately three hours out of an eight-hour day, should change position every three hours, could stand/walk for two hours out of an eight-hour day, and could frequently lift up to 10 pounds and occasionally lift over 10 pounds. (T. 491.)

The ALJ afforded great weight to Dr. Magurno's opinion based on her "programmatic expertise" and noted that her opinion was supported by her evaluation of Plaintiff. (T. 21.) The ALJ stated that he found greater exertional limitations than those identified by Dr. Marguno in finding Plaintiff to be capable of a range of sedentary work activity. (*Id.*) The ALJ afforded some weight to Dr. Seybold's opinion because he was a treating specialist and included his limitations for lifting, carrying, standing and walking and a sit/stand option within the RFC, but rejected the remainder of his limitations because they were not consistent with his treatment notes. (T. 21-22, 557, 691, 701.) The ALJ noted that, although Plaintiff has lower back pain and underwent lumbar surgery in October 2015, the record supports the conclusion that she can perform a range of sedentary work. (T. 22.) The ALJ also noted findings from December 2016 indicating that Plaintiff had full range of motion of her back without any changes related

20

to deformity, lumbar and thoracic tenderness was present, range of motion was full in the upper and lower extremities, grip strength was normal and non-tender, gait was steady, and sensation was intact to light touch, supported the conclusion that she could perform a range of sedentary work and contradicted Dr. Seybold's conclusion that she would be off-task or frequently absent. (T. 22-23, 591.)

Plaintiff next argues that the ALJ erred in finding no diminishment to work pace and/or attendance despite the opinion evidence from Dr. Seybold and Dr. Moore and that the ALJ improperly substituted his own judgment for these undisputed, competent medical opinions. (Dkt. No. 9, at 11-15, 22-23 [Pl.'s Mem. of Law]; Dkt. No. 16, at 2-4 [Pl.'s Reply Mem. of Law].) Plaintiff also argues that the ALJ erred in the weight he afforded to Dr. Moore and Dr. Rourke's opinions. (Dkt. No. 9, at 15-19 [Pl.'s Mem. of Law].) The Court finds these arguments unpersuasive.

First, the ALJ's analysis and resulting RFC indicate sufficient consideration of the various medical opinions, the medical evidence pertaining to Plaintiff's impairments and treatment, and Plaintiff's testimony. (T. 18-23.) In his decision, the ALJ indicated that he had considered Plaintiff's symptoms based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and had the opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. (T. 20.) It is apparent from the decision that the ALJ adequately considered the evidence of record, contrary to Plaintiff's arguments that he substituted his own lay opinion and failed to provide sufficient explanation of his analysis. (T. 18-23; Dkt. No. 9, at 11-23 [Pl.'s Mem. of Law]; Dkt. No. 16, at 2-4 [Pl.'s Reply Mem. of Law].)

Second, the ALJ's analysis provides sufficient consideration of the opinions of record, and, as noted above, specific reasons for the weights afforded to each of them, reasons which the Court finds supported by the objective evidence of record. (T. 18-23.) Plaintiff argues that the ALJ substituted his own opinion for that of the medical sources and improperly failed to cite to evidence contradicting the opinions form Dr. Moore and Dr. Rourke. (Dkt. No. 9, at 11-23 [Pl.'s Mem. of Law].) However, the Court notes that there is a difference between analyzing medical records to assess what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a trained medical source; the ALJ is precluded only from the latter. *See Hanson v. Comm'r of Soc. Sec.*, 15-CV-0150, 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016), *Report and Recommendation adopted by* 2016 WL 3951150 (N.D.N.Y. July 20, 2016) (noting that, while it is impermissible for an ALJ to interpret "raw medical data" and substitute his own opinion for that of a medical source, it is within the ALJ's power to resolve conflicts in the medical record). It was also within the ALJ's purview to weigh the evidence of record and resolve conflicts therein. *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord. Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014).

Finally, as discussed above, the Court also finds that the ALJ properly weighed the opinions from Dr. Harding, Dr. Moore, and Dr. Rourke in considering Plaintiff's alleged mental impairments and related limitations. For the reasons stated herein, the

ALJ's analysis of the opinion evidence as well as the resulting RFC are supported by substantial evidence.  Thus, remand is not required on these bases.

### C.  Step Five Finding

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)); *see also Walker v. Colvin*, 15-CV-0465, 2016 WL 4768806, at *4 (N.D.N.Y. Sept. 13, 2016) ("it is the Commissioner's burden to prove there are jobs that exist in significant numbers in the national economy that the claimant can perform.") (internal citations omitted).

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).  "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability."  *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

After determining the RFC, the ALJ found that Plaintiff has no past relevant work. (T. 23.)  The ALJ then concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, including information clerk (DOT code 237.367-046, 88,000 jobs nationally), general office worker (DOT code 249.587-018, 90,000 jobs nationally), and assembler (DOT code 713.687-026, 34,00 jobs nationally), based on the VE's testimony at the administrative hearing and Medical-Vocational Rule 201.27.  (T. 23-24, 62-70.)

Plaintiff argues that the ALJ's Step Five determination is not supported by substantial evidence because (1) the RFC and the related hypothetical posed to the does not properly account for Plaintiff's true limitations, and (2) the VE's testimony concerning job numbers is not reliable because the job numbers the VE cites referred to a broad range of positions and were not limited to the specific DOT titles she identified. (Dkt. No. 9, at 19-25 [Pl.'s Mem. of Law].)  Plaintiff contends the VE did not eliminate the jobs that Plaintiff cannot perform within that range of jobs, and the resulting job numbers are therefore ambiguous and do not satisfy Defendant's burden at Step Five. (*Id.* at 25; Dkt. No. 16, at 5-6 [Pl.'s Reply Mem. of Law].)  The Court finds these arguments to be without force.

First, as discussed above, the Court finds that the ALJ's findings regarding Plaintiff's impairments and RFC are supported by substantial evidence.  The ALJ's decision provides sufficient, supported explanation for his findings, and Plaintiff has not established further limitations based on the evidence of record.  Further, the

hypothetical posed to the VE accurately reflected the RFC, which the Court has found to be supported by substantial evidence. (T. 20, 69-70.)

Second, as this Court previously indicated in *Walker*, "[r]equiring at least an estimate of jobs in specific titles, where that estimate is either based on sources/literature or the VE's experience/consultation is consistent with the regulations and 'assures that individuals are not denied benefits on the basis of [i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] lives." *Walker*, 2016 WL 4768806, at *8 (quoting *Peterson Moore v. Colvin*, 14-CV-583-JTC, 2016 WL 1357606, at *5 (W.D.N.Y. April 4, 2016); citing *Robinson v. Astrue*, 08-CV-4747, 2009 WL 4722256, at *2 (E.D.N.Y. Dec. 9, 2009)) (internal quotation marks omitted). Here, as Defendant argues, the VE acknowledged that the numbers on which she relied were not broken down by DOT code, that she would be using a reduced number to account for Plaintiff's specific limitations, and that the numbers she gave were not based solely on the U.S. Statistical Publishing report but also on her judgment as a VE. (Dkt. No. 15, at 14-15 [Def.'s Mem. of Law]; T. 68-69.) Indeed, the VE's testimony indicated that, although she referenced numbers from U.S. Statistical Publishing (which she stated does not report by DOT code), she would give a DOT code that she thought was the best representation of the work in terms of skill, exertional level, and requirements of the job. (T. 68.) The VE did note that more than one DOT code could apply to a category of jobs, that there could be new jobs that were included within the statistical number she provided that were never identified by the DOT code, and that she was not saying the number she gave was the number in a

specific DOT code. (*Id.*) When asked by the ALJ about the consistency of her testimony with the DOT, the VE indicated that the DOT does not give guidance about numbers of jobs, but that she did not believe there was any inconsistency with the DOT. (T. 70.) This testimony, based on statistical resources as well as the VE's experience, does not support Plaintiff's argument that the numbers the VE identified grossly overstated the number of jobs available to Plaintiff. (Dkt. No. 16, at 5-6 [Pl.'s Reply Mem. of Law].)

Third, although Plaintiff argues that the VE reduced her overall job numbers to account for a sit-stand option but not for the fact that the VE's numbers included numerous job titles beyond Plaintiff's RFC, the Court's review of the VE's testimony indicates that the numbers provided by the VE were estimates based on her experience and are further supported by her acknowledgment of the fact that they represented the larger job categories rather than specific DOT codes. (Dkt. No. 16, at 5-6 [Pl.'s Reply Mem. of Law]; T. 68-69.) Unlike in *Walker*, the Court finds the VE testimony, adopted by the ALJ, provides a fair estimate of the jobs available that Plaintiff can perform. *Walker*, 2016 WL 4768806, at *8 (citing *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 407, n. 13 (D. Conn. May 14, 2012)). Thus, for the reasons discussed above, the Court finds that the ALJ's Step Five finding is supported by substantial evidence. Remand is not required on this basis.

## IV. CONCLUSION

**WHEREFORE**, for the reason stated herein, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: March 8, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge